UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami-Dade Division

CASE NO.:

CRISTINA SANGUILY, individual, and on
behalf of minor child, R.S.

       Plaintiffs,

v.

CVS PHARMACY, INC., a Rhode Island
corporation, and VERIDIAN HEALTHCARE
LLC, an Illinois limited liability company,

       Defendants

_____/

## COMPLAINT

COMES NOW the Plaintiffs Cristina Sanguily, individually, and as a guardian on behalf of her minor child R.S. (collectively "Plaintiffs"), and complain against CVS Pharmacy, Inc. ("CVS") and Veridian Healthcare LLC ("Veridian") (collectively "Defendants") and for causes of action against the Defendants, allege as follows:

### I.    INTRODUCTION

1.    R.S. ("R.S.") is a 14-month-old child who was seriously injured after R.S. ingested a button battery that fell out of a digital thermometer. The button battery readily fell out of a defective thermometer with insufficient safety mechanisms or warnings to guard against such events. R.A. ingested the battery on November 14, 2025, and experienced extreme pain and suffering as a result.

2.    "Button batteries" or coin cell batteries are small round batteries that power a variety of electronic devices. The little silver colored batteries are typically lithium-ion, and they

**1**

**COMPLAINT**

are tremendous swallowing hazards to small children.  Little children are particularly vulnerable because they put things in their mouth, and button batteries can get stuck in their esophagus and other parts of their bodies where they do tremendous damage in short order.  An electrical current can form in the body where the battery is lodged, and hydroxide, an alkaline chemical surrounds the battery and can cause tissue burns.  This was the type of battery swallowed by R.S.

3.      As a result, R.S. required immediate surgery to remove the button battery. She was injured and spent several days and nights in the hospital as a result.

4.      The product in question was a CVS Health branded thermometer (hereinafter "Defective Product" or "Product"). The model number of the Defective Product was KD-1300. On information and belief, the Defective Product was manufactured by 180 Innovations, which is either an assumed name for or a brand owned by Veridian Healthcare LLC.

5.      This Product was unreasonably dangerous to consumers, and this is a product liability action to address the dangers.  The injury in question did not need to happen, and it would not have happened if the product was manufactured, marketed, labeled, and sold in a manner that was safe.  Plaintiffs, through this lawsuit, also seek to prevent such catastrophes to other unsuspecting parents and innocent children. Plaintiffs want to enjoin the sales of dangerous products like the ones that hurt R.S., and they seek warnings to others about defects.

6.      The horrendous dangers posed to young children by easily accessible lithium button batteries have been well documented in recent years.  They have been noted by consumer protection groups, physicians, the media, and even some elements of the electronics industry, who have lobbied for alternative designs to prevent more children from being injured.  There are industry standards for manufacturers and sellers to protect compartments that contain button batteries. But if safer alternatives are ignored and unreasonably dangerous products are

**COMPLAINT**

recklessly thrust into commerce, where they fall into the hands of innocent children, those safety standards and recommendations are meaningless to prevent foreseeable harm.  Also, "planned obsolescence" is unacceptable when it comes to the safety related features of a product.  If a product's safety features are designed or manufactured in a manner that the safety components will fail in short order with ordinary use, those products are defective and unreasonably dangerous.

7.     This lawsuit is based on the design defects, manufacturing defects, negligence, failures to warn, and breaches of warranties that led to the serious injury of a small child.

## II.     PARTIES

8.     Plaintiffs are Cristina Sanguily, individually and as a parent, the representative, and guardian of minor child R.S.  The Plaintiffs are residents of Miami, Florida.

9.     Plaintiffs are informed and thereon allege that Defendant CVS Pharmacy, Inc. is a corporation organized and existing under the laws of the state of Rhode Island with a principal place of business at One CVS Drive, Woonsocket, RI 02895.  Service of process is proper on CVS Pharmacy, Inc. on its registered agent for service of process, CT Corporation System, at 450 Veterans Memorial Parkway, Suite 7A, East Providence, RI 02914.

10.     Plaintiffs are informed and thereon allege that Defendant Veridian Healthcare LLC is a limited liability company organized and existing under the laws of the State of Illinois with a principal place of business at 1175 Lakeside Drive, Gurnee, IL 60031.  Service is proper on Veridian Healthcare LLC on its registered agent for service of process, Brian R. McGinley, at 233 S Wacker Dr., Ste. 7800, Chicago, IL 60606-6459.

## III.     JURISDICTION AND VENUE

11.     This Court has jurisdiction because of diversity between the parties under 28

COMPLAINT

U.S.C. § 1332(a).  The Plaintiffs and Defendants have complete diversity of citizenship at the time of filing and the dispute far exceeds $75,000 in controversy, exclusive of interest, punitive damages, attorney fees or other litigation costs.

12. Some of the claims in this Complaint arise under and are related to 15 U.S.C. § 2056e and 15 U.S.C. § 2072, thus conferring to this Court original and Federal question jurisdiction over the matter pursuant to 28 U.S.C. § 1331.

13. Venue is proper in this Court under 28 U.S.C. §1391(b)(1).  Defendant CVS conducts substantial and extensive business in the State of Florida, and in this federal judicial district, and Defendants CVS and Veridian are also believed to have imported, promoted, and distributed defective products into the State of Florida, and in this district; therefore, they are subject to the Court's personal jurisdiction in this district, and accordingly reside in this district for venue purposes.  A substantial part of the events and omissions that comprise the basis of this lawsuit occurred in this District, including the emergency procedure that was necessary to remove the button battery from R.S. and effectively save R.S.'s life, and the pain and suffering by Plaintiffs.  Moreover, on information and belief, a substantial number of persons who may be similarly situated, or subject to the harms of this defective product live in this District so that jurisdiction over the Defendants is appropriate.

## IV.   GENERAL FACTS

14. On or about November 14, 2025, R.S. swallowed a button battery.  The button battery fell out of the Defective Product which was marketed, sold, and/or delivered by Defendant CVS to Plaintiffs.  The Defective Product was a thermometer and is depicted here in a photo:

**4**

**COMPLAINT**





15.     The Defective Product displays CVS Health as the brand.   Defendant CVS Pharmacy, Inc. owns U.S. Trademark Registration No. 5,464,981 for CVS HEALTH.   The Defective Product also displays 180 INNOVATIONS, which is believed to be a manufacturer of the Defective Product.   Defendant Veridian Healthcare LLC is the current owner of U.S. Trademark Registration No. 5,315,516 for 180 INNOVATIONS, which is registered in class 040 in connection with "private label services, namely, custom manufacturing of private label thermometers for medical purposes, oral care products, and personal care products for others." Accordingly, CVS and Veridian are proper parties as the manufacturer, designer, distributor, and/or seller of the Defective Product.

16.     The button battery in question fell out of the remote because the battery access cover had inadequate safety precautions to prevent the access cover from opening.

17.     The battery compartment securing mechanisms on this particular remote failed to guard against release of the battery, where that event was foreseeable.

18.     On information and belief, the Defective Product was sold and delivered without adequate instructions to consumers or downstream users about either the incredible dangers of

button batteries themselves—much less of caustic choking hazards specifically, dangers of the button battery in the thermometer, or the importance of keeping button batteries away from small children.  On information and belief, there were no relevant warnings on the thermometer, the included instructions, or about the dangers of button batteries.

19.    The button battery that fell out of the remote was a LR41 lithium-ion type battery.

20.    On information and belief, the Defective Product was featured, located, and purchased from a CVS store or from www.cvs.com.

21.    Given CVS's brand is CVS Health and CVS's commitment to "Building a world of health around every individual" with its specialization in health and wellness related goods and service,  it is uniquely poised to prevent harms, and in this case, to take proactive steps to suspend sales of defective products and warn unsuspecting consumers of the significant dangers posed by these defective products.  The dangers of these defective products foreseeably extend to CVS's customers, those who may encounter these products, and especially to small children.

22.    In June 2010, *Pediatrics*, the official journal of the American Academy of Pediatrics, ran an article titled *Preventing Battery Ingestion: An Analysis of 8648 Cases*.  The article states "button batteries lodged in the esophagus cause severe tissue damage in just 2 hours . . ."[1]  According to the National Safety Council, a consumer safety organization, "[e]very year, more than 2,800 kids are treated in emergency rooms after swallowing button batteries . . .  The number of injuries and deaths have increased nine-fold in the last decade."[2]

23.    The dangers of button batteries like these are well known to those in the manufacturing industry.  In 2011, The National Electrical Manufacturers Association (NEMA)

---

[1] Toby Litovitz, Nicole Whitaker & Lynn Clark, *Preventing Battery Ingestions: An Analysis of 8648 Cases*, 125 Pediatrics 1178, 1181 (2010)
[2] Nat'l Safety Council, *Tiny Batteries Pose Sizeable Risks* (accessed February 25, 2026), https://www.nsc.org/community-safety/safety-topics/child-safety/button-batteries.

**6**

**COMPLAINT**

and the Consumer Electronic Association (CEA) (now known as the Consumer Technology Association (CTA)) came out publicly to raise industry standards requiring either a tool or multiple simultaneous maneuvers to access a lithium battery compartment.  A variety of economically feasible alternatives are available to the design of the Defective Product.  For example, there are simple screws that could secure compartments.  These precautions would cost mere cents.

24.     In fact, button batteries are so dangerous and, if ingested, deadly to children that in 2022 Congress passed Reese's Law—15 U.S.C. § 2056e—which requires consumer products containing button batteries meet securing and warning label standards.  Reese's Law requires consumer products containing button batteries be "secured in a manner that would eliminate or adequately reduce the risk of injury from a button or coin cell battery ingestion by children that are 6 years of age or younger during reasonably foreseeable use or misuse conditions." 15 U.S.C. § 2056e (a)(1).  The products must also contain warning labels on the packaging of a consumer product, on any literature that accompanies a product, and, as practicable, directly on the product containing a button battery that is visible to the consumer upon installation or replacement of a button battery.  15 U.S.C. § 2056e (a)(2).  The warning label shall "clearly identify the hazard of ingestion and instruct consumers to keep batteries out of the reach of children, to seek immediate medical attention if a battery is ingested, and to follow any other consensus medical advice."  15 U.S.C. § 2056e (b).  These standards were not followed by Defendants in preventing harms from button batteries.

25.     There are also well known standards for product configurations with requirements to prevent access to button battery compartments by children, which include UL 4200A Products Incorporating Button Cell Batteries of Lithium of Similar Technologies.  These standards were

**7**

**COMPLAINT**

also not followed by Defendants in preventing harms from button batteries.

26.     To design, manufacture, or sell products that are defective by these basic standards, or to turn a blind eye and ignore safety standards geared to protect small children, is recklessly and grossly negligent in that it shows extreme disregard of the likely harm to consumers.

27.     On or around November 14, 2025, R.S. swallowed a button battery that fell out of the Defective Product.

28.     R.S.'s mother discovered the thermometer did not have a battery in it.  Baby R.S. had grabbed the button battery that fell out of it, swallowed it, and was choking.  She took R.S. quickly to an emergency room in Miami, Florida and an x-ray showed the button battery lodged in R.S.'s airway.  R.S. was then taken to Jackson Memorial Hospital in Miami, FL, where they surgically removed the battery.

29.     R.S. unnecessarily suffered physical injury, pain and suffering, and extreme emotional distress throughout the initial choking episode, and through the surgery, and aftermath of surgical treatments.  These injuries were proximately caused by the defective product, namely the negligently and recklessly designed, manufactured, and labeled product containing the button battery.

30.     Plaintiff Cristina Sanguily, R.S.'s mother, suffered immediate and proximate emotional trauma, and the foreseeable enduring emotional trauma of having to watch R.S., her only child, suffer terrifying injuries and undergo surgery.

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(*Negligent Product Liability*)

8

COMPLAINT

31.    Plaintiffs incorporate each and every allegation above as though fully set forth herein.

32.    Defendants CVS and Veridian were engaged in the manufacture, design, testing, producing, inspecting, vending, distributing, introducing into interstate commerce, transporting in interstate commerce, advertising, selling, installing, assembling, or recommending for use to the general public the Defective Product.

33.    Defendants CVS and Veridian owed duties of care to actual and potential customers and consumers with respect to the Defective Product.  Such duties included but were not limited to: designing, formulating, manufacturing, distributing, selling, and providing the product in a fashion that was safe to consumers; packaging the Defective Product safely so as to reasonably minimize the potential for injury; labeling the Defective Product so as to reasonably warn consumers of the potential for danger; and reasonably applying knowledge and information from past incidents, complaints, studies, observations, reports, experience, or investigation to provide for the safety of consumers with respect to the products.

34.    Defendants knew or should have known that if the Defective Product was not properly and carefully manufactured, designed, tested, inspected, assembled, delivered, molded, labeled, warned, and signed prior to sale or distribution to consumers, it would, if used by any member of the general public, be a substantial factor in causing serious and permanent injury.

35.    Defendants negligently and carelessly manufactured, designed, tested, failed to test, maintained, inspected, installed, assembled, delivered, molded, labeled, failed to warn, signed and sold the Defective Product so that it was in a dangerous and defective condition and unsafe for the use and purposes for which it was intended.

36.    The condition of the Defective Product was known to Defendants or should have

**9**

**COMPLAINT**

been discovered by and through the exercise of ordinary care and reasonable diligence, but was not disclosed or made known to purchasers or users of the Defective Product, including Plaintiffs.

37. The purchasers or users of the Defective Product had no knowledge of the defective condition of the Defective Product or of any danger in the use of the Defective Product.

38. On information and belief, in doing the acts alleged in this Complaint, Defendants violated statutes, rules, standards, regulations, or guidelines applicable to Defendants' conduct, including laws, regulation, or industry related standards relating to the manufacture, distribution, and sale of the Defective Product and similar items.

39. The injuries and damages to Plaintiffs described more fully above were a direct and legal result of the violations of the statutes, rules, regulations, standards, and guidelines by Defendants.

40. The statutes, regulations, standards, and guidelines violated by Defendants were drafted, written, and designed to prevent the type of incidents and injuries that occurred in this case, and Plaintiffs are among the class of persons the statutes, regulations, standards, and guidelines were designed to protect.

41. As a direct and legal result of the negligence and carelessness of the Defendants, Plaintiffs suffered severe shock, injuries, and traumatic injury.

42. Plaintiffs were also injured in their health, all to Plaintiffs' general damages in a sum which will be shown according to proof.

43. As a further direct and legal result of the negligence and carelessness of the Defendants, Plaintiffs were compelled to and did incur expenses for medical care, hospitalization, nursing and attendant care and other incidental expenses and will have to incur

**COMPLAINT**

additional like expenses in the future, all in amounts presently unknown to Plaintiffs.

44.     As a direct and legal result of the negligence and carelessness of the Defendants, Plaintiffs were damaged and suffered immeasurably in terms of their emotional distress and continuing injuries, including severe emotional distress to R.S.'s mother.

45.     The negligence and carelessness of the Defendants was a substantial factor in causing the injuries and damages alleged above.

## SECOND CAUSE OF ACTION

### (*Strict Products Liability—Design and Manufacturing Defect*)

46.     Plaintiffs hereby incorporate by reference Paragraphs 1 to 30 as though fully set forth herein.

47.     "To state a cause of action for strict liability, a plaintiff must allege (1) the manufacturer's relationship to the product in question, (2) the unreasonably dangerous condition of the product, and (3) the existence of a proximate causal connection between the condition of the product and the plaintiff's injury." *Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009).

48.     On information and belief, Defendants designed, manufactured, and sold the Defective Product.

49.     At the time that the Defective Product left the control of Defendants, the Defective Product was unreasonably dangerous and defective as a result of design and manufacture by Defendants.  The Defective Product contained a button battery, which is very dangerous to children if swallowed, but did not contain suitable mechanisms to keep the cover to the battery compartment closed and covered to prevent the button battery from falling out.  This is unreasonably dangerous because button batteries present a choking hazard to children and if

ingested, can result in extremely serious injuries or death.

50.     At all relevant times, Defendants knew and intended that the Defective Product would be purchased, and used by members of the general public and downstream consumers who would rely on Defendants to safely design, manufacture, test, market and distribute the Product in a safe manner and to transmit relevant warnings about the Defective Product, including parents of children who would use a thermometer to check their child's temperature.

51.     At the time of the incident giving rise to this Complaint, the Defective Product was being used and/or stored in a manner and fashion that was foreseeable by Defendants, and in a way the Defective Product was intended to be used and or stored.

52.     Defendants manufactured and designed the Defective Product defectively or knew its manufacture or design was defective, or both, causing the Defective Product to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

53.     On information and belief, the Defective Product is defective because it was not designed with durable enough materials or mechanisms such that safety mechanisms could survive their useful lifespan.

54.     On information and belief, the Defective Product is defective because it was not designed with durable enough materials to retain resiliency of safety mechanisms at critical times.

55.     On information and belief, the Defective Product is defective because it was not designed in a manner to withstand the environment in which it was likely to be found so that it was unreasonably dangerous for its intended users and for those who might come in contact with the product.  It was defective because, despite the enormous potential to cause injury or death, it

**12**

**COMPLAINT**

was not designed or manufactured to be able to survive foreseeable use and/or misuse by consumers, downstream users, children or innocent bystanders.

56.     On information and belief, the Defective Product was defective by manufacture, because the material from which it was made failed at critical junctures which might have maintained operability of the safety mechanism.

57.     On information and belief, the Defective Product was defective by manufacture by reason of poorly fashioned plastics, which were reasonably probable to fail in a situation where they should have been strong.

58.     On information and belief, the Defective Product was defective by manufacture, because it was not suitably designed to withstand the environment in which it would be likely to operate, including around small children.

59.     On information and belief, the Defective Product is defective because it is reasonable to anticipate small children will come in contact with items such as thermometers.

60.     On information and belief, the Defective Product is defective because it is reasonable to anticipate thermometers will be used in an environment where they are susceptible to being dropped, handled, chewed, and where they are susceptible to repeated use.

61.     On information and belief, the Defective Product was defective because it had a purported safety mechanism to retain a battery, but which mechanism could not clearly be observed so that a consumer might know whether it was in a locked or unlocked state, and so it was reasonably likely to be closed, but actually be unlocked, which made it more likely that a battery could be dislodged from the product where it might be ingested by an unsuspecting innocent victim.

62.     On information and belief, the Defective Product is defective because a variety of

**13**

**COMPLAINT**

safer, reasonable alternatives would have been available to designers of the instant thermometers, including, but not limited to inexpensive screw mechanisms that are hard to break, hard to wear out, and hard to access by small children.

63.     On information and belief, the Defective Product is defective because it is reasonably foreseeable button batteries can be consumed by small children which will cause catastrophic and sometimes deadly injury to their victims.

64.     As a legal result of the aforementioned dangerous and defective condition of the Defective Product, Plaintiffs were injured and suffered damage as alleged.

### THIRD CAUSE OF ACTION

### (*Strict Products Liability—Failure to Warn of Defective Condition*)

65.     Plaintiffs incorporate Paragraphs 1 to 30 as though fully set forth herein.

66.     "Under Florida product liability law, a manufacturer is required to give appropriate warnings about particular risks of the product which the manufacturer knew or should have known are involved in the reasonably foreseeable use of the product. Failure to do so constitutes a negligent failure to warn." *Zaslow v. Louisville Ladder, Inc.*, No. 9:18-CV-80091, 2019 U.S. Dist. LEXIS 223727, 2019 WL 7376780, at *3 (S.D. Fla. Oct. 4, 2019). "A product is defective when the foreseeable risks of harm from the product could have been reduced or avoided by providing reasonable instructions or warnings, and the failure to provide those instructions or warnings makes the product unreasonably dangerous." *Id*.

67.     The Defective Product was in a dangerous and defective condition when introduced into the stream of commerce by the Defendants.  The Defective Product was so defective that when used in a way that was reasonably foreseeable, the potential risks of the Defective Product created a substantial danger to users of the Defective Product and others and

**14**

**COMPLAINT**

could and would cause those serious injuries.

68.     The Defective Product had potential risks that were known or knowable by use of scientific knowledge available at the time of manufacture, distribution and sale of the Defective Product.  Defendants knew, or, in the exercise of reasonable care, should have known that the potential or inherent risks presented a substantial danger to users of the Defective Product because Defendants possessed special knowledge of the materials, design, character and assemblage of the Defective Product.  Plaintiffs and ordinary consumers would not recognize, nor have knowledge that the Product was dangerous and defective.

69.     On information and belief, the Defective Product was defective by failure to warn because there were no suitable warnings of the dangers of button batteries on the thermometer, or, on information and belief, with any of the literature that provided with the product, which information and suitable warnings might have informed parents, and would-be users of the product, of the extreme dangers of the button battery products to small children from ingestion.

70.     On information and belief, Defendants failed to warn or instruct of the potential risks and dangerous and defective conditions of the Defective Product on the product or on the product packaging.  On information and belief, Defendants failed to provide inserts or instructions suitably warning of the dangers that a button battery that fell out of the thermometer could injure or kill a child that ingested the battery.  No markings or warnings were located on the Defective Product that might have been noted by downstream users of the Defective Product. The failure to provide warnings on the thermometer makes the Defective Product unreasonably dangerous.

71.     Plaintiffs were harmed and suffered the injuries and damages alleged as a result of Defendant's failure to warn.  The lack of proper warning or instructions was a substantial factor

**15**

**COMPLAINT**

in causing Plaintiffs' harm.

## FOURTH CAUSE OF ACTION

### (*Breach of Implied Warranty*)

72.     Plaintiffs incorporate Paragraphs 1 to 30 as though fully set forth herein.

73.     A claim for breach of the implied warranty of merchantability requires proof that: (1) the plaintiff was a foreseeable user of the product; (2) the plaintiff used the product in the intended manner at the time of injury; (3) the product was defective when the warrantor transferred it to the plaintiff; and (4) the defect caused the plaintiff's injuries.  *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011).

74.     At relevant times herein, Defendants marketed, manufactured, promoted, distributed, imported, or sold the Defective Product for use by the public at large, including the Plaintiffs.

75.     Defendants knew the use for which their Defective Product was intended and represented or impliedly warranted the Defective Product to be of merchantable quality, and safe and fit for its intended uses and users of the products.

76.     It is foreseeable that a mother of a child would be a user of the product to take the temperature of adults and/or children.  Plaintiffs stored the product in a reasonable, normal, and foreseeable manner for continued and future use of the Product, and reasonably relied upon the Defendants and their agents to disclose known defects, risks, dangers, and side effects of the Defective Product.

77.     By the conduct alleged, Defendants impliedly warranted to Plaintiffs that the Defective Product was merchantable, usable and fit for the purpose intended.

78.     Defendants breached this warranty in importing, selling, designing and

**16**

**COMPLAINT**

distributing the Defective Product in a dangerous and defective condition and in failing to warn Plaintiffs and users of the Product of these defects.

79.     As a direct result of the conduct of the Defendants, Plaintiffs have suffered serious and permanent physical and emotional injuries, have expended large sums of money for medical care and treatment, have suffered and will continue to suffer economic loss, and have otherwise been physically, economically, and emotionally injured.

## FIFTH CAUSE OF ACTION

### (*Emotional Distress*)

80.     Plaintiffs incorporate Paragraphs 1 to 30 as though fully set forth herein.

81.     "Under Florida law, to state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Holston v. Dawson*, No. 22-11198, 2023 U.S. App. LEXIS 30097, 2023 WL 7485227, at \*7 (11th Cir. Nov. 13, 2023).

82.     R.S.'s mother, Cristina Sanguily, suffered extreme emotional distress as bystanders having to experience the mental and emotional trauma from the injury and care of R.S. and having firsthand experience in observing the severe injuries.  Ms. Sanguily was present at the time of the injury-producing events and aware of the severe injuries being exacted against R.S.  In addition to the tremendous mental stress exacted from the ordeal, R.S.'s mother was financially damaged by the family emergency, loss of income, and attendant expenses and care. This emotional distress was inflicted as the result of recklessness as to the likelihood of severe injury, and negligence, and was the proximate cause of damages to R.S.'s mother. Thermometers are often used and marketed for use with measuring temperatures of children.  It

**COMPLAINT**

was reckless to provide such products, which were likely to be used in the vicinity of small children, with reckless disregard to the harm that could be occasioned to small children if button batteries that fell out of a product were ingested.

83.     Defendants' acts and omissions directly and proximately caused R.S.'s mother to suffer and continue to suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame, such that an ordinary, reasonable person would be unable to cope with it.   Defendants' negligence was a substantial factor in causing Plaintiff's serious emotional distress.   Ms. Sanguily seeks compensation for the damages received as a result of this severe emotional distress.

## SIXTH CAUSE OF ACTION

## (Violation of 15 U.S.C. § 2056e)

84.     Plaintiffs incorporate Paragraphs 1 to 30 above as though fully set forth herein.

85.     Reese's Law, as stated in 15 U.S.C. § 2056e, provides a set of consumer product safety standards for button cell or coin batteries and consumer products containing such batteries. Products that contain, or are designed to use, a button cell or coin battery, and are manufactured or imported on or after March 19, 2024 shall be "secured in a manner that would eliminate or adequately reduce the risk of injury from a button or coin cell battery ingestion by children that are 6 years of age or younger during reasonably foreseeable use or misuse conditions." 15 U.S.C. § 2056e (a)(1).  The products must also contain warning labels on the packaging of a consumer product, on any literature that accompanies a product, and, as practicable, directly on the product containing a button battery that is visible to the consumer upon installation or replacement of a button battery.  15 U.S.C. § 2056e (a)(2).  The warning label shall "clearly identify the hazard of ingestion and instruct consumers to keep batteries out of the reach of children, to seek immediate

**COMPLAINT**

medical attention if a battery is ingested, and to follow any other consensus medical advice." 15 U.S.C. § 2056e (b).

86. Upon information and belief, Defendants have violated 15 U.S.C. § 2056e by failing to secure the Defective Product in a manner that would eliminate or adequately reduce the risk of ingestion of by a child 6 years of age or younger. The Defective Product's purported safety mechanism to retain a battery was configured, manufactured and designed in a manner so that it could not clearly be observed whether it was engaged safely. It was configured so a consumer might not clearly know whether it was in a locked or unlocked state, and so it could reasonably be believed to be closed and secure, but actually be unlocked, which means the battery was not adequately secured and could be dislodged from the product where it might be ingested by a child.

87. Upon information and belief, Defendants have violated 15 U.S.C. § 2056e by failing to provide warning labels (i) on the packaging of the Defective Product, (ii) on any literature that accompanies the Defective Product, and (ii) directly on the Defective Product containing the button battery that is visible to the consumer upon installation or replacement of a button battery. Defendants failed to provide any warning label that clearly identifies the hazard of ingestion and instruct consumers to keep batteries out of the reach of children, to seek immediate medical attention if a battery is ingested, and to follow any other consensus medical advice. *See supra* ¶14 (failing to provide any warning directly on the Defective Product).

88. Defendants' violations of 15 U.S.C. § 2056e caused Plaintiffs to sustain serious physical and emotional injuries, and damages as alleged.

89. As a result of Defendants' violations of 15 U.S.C. § 2056e and pursuant to 15 U.S.C. § 2072, Plaintiffs are also entitled to recover the costs of suit, including reasonable

**19**

**COMPLAINT**

attorneys' fees (determined in accordance with section 2060(f) of this title) and reasonable expert witnesses' fees.

## VI.   DAMAGES & RELIEF REQUESTED

90.   As a direct and proximate result of Defendants' conduct, Plaintiffs, individually, and as a guardian on behalf of minor child R.S., have suffered the following damages, and Plaintiffs pray for judgment against the Defendants and an award against each of them for:

a.   General damages according to proof;

b.   Lost earnings, health care expenses paid in the past, and that will be necessary in the future;

c.   Physical pain and suffering in the past;

d.   Physical pain and suffering which will be suffered in the future;

e.   Mental anguish and emotional distress suffered in the past;

f.   Mental anguish and emotional distress that will be suffered in the future;

g.   For interest from the date of accident to the time of judgment;

h.   For costs of suit incurred herein;

i.   For costs attendant to medical care, lodging care, travel expenses, and incidental expenses attendant to receiving medical treatment;

j.   An award for punitive damages as may be permitted by law;

k.   An award of reasonable attorney fees where permitted by statute;

l.   A preliminary and permanent injunction restraining Defendants from directly or indirectly selling the Defective Product to any other persons;

m. A preliminary and permanent injunction requiring Defendants to notify all relevant consumers and recall the Defective Product and issue suitable recall

**20**

**COMPLAINT**

notices to consumers who have purchased these Defective Product in the past; and

n.   For such other and further relief as the Court deems proper.

## VII.   JURY DEMAND

NOTICE is hereby given that Plaintiffs demand a trial by jury in the above-captioned matter.

DATED: March 17, 2026

Respectfully submitted,

THE BUCHE LAW FIRM, P.C.

*/s/ John K. Buche*
John K. Buche (*Pro Hac Vice* Forthcoming)
901 S MoPac Expy, Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (512) 215-4997
Email: jbuche@buchelaw.com

BURR & FORMAN, LLP (Local Counsel)

*/s/ Andrew Sarangoulis*
**Andrew Sarangoulis, Esq. (FL Bar No. 1002608)**
200 E. Broward Blvd., Suite 1020
Fort Lauderdale, FL 33301
Telephone: (954) 414-6200
Facsimile: (954) 414-6201
Email: asarangoulis@burr.com
Email: rzamora@burr.com

*Counsel for Plaintiffs*

21

**COMPLAINT**